JUDGE SAND

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

BANK OF AMERICA, N.A. as Successor Trustee   :
to Wells Fargo Bank, N.A. Trustee for the    :
Registered Holders of Credit Suisse First Boston  :
Mortgage Securities Commercial Mortgage   :
Pass- Through Certificates, Series 2007-C4,    :
                                  :

          Plaintiff,              :

    v.                         :      **Complaint**

COLUMN FINANCIAL, INC.,         :

    and                    :      No.

CREDIT SUISSE FIRST BOSTON     :
MORTGAGE SECURITIES CORP.      :

    and                    :

CREDIT SUISSE (USA), INC.,      :

          Defendants.        :
--------------------------------------------------------------X

RECEIVED
AUG 2 5 2010
U.S.D.C. S.D. N.Y.
CASHIERS

## COMPLAINT

      Plaintiff Bank of America, N.A. as Successor Trustee to Wells Fargo Bank, N.A. Trustee

for the Registered Holders of Credit Suisse First Boston Mortgage Securities Commercial

Mortgage Pass-Through Certificates, Series 2007-C4 ("Plaintiff"), by and through its

undersigned counsel, files this Complaint against Defendants Column Financial, Inc.

("Column"), Credit Suisse First Boston Mortgage Securities Corp. ("CSFB") and Credit Suisse

(USA), Inc. ("CS") (collectively the "Defendants"), and in support thereof, states as follows:

### NATURE OF ACTION

    1.     This action arises out of numerous breaches of contractual provisions by CSFB

and CS on the heals of a large scale mortgage fraud.  It is against this backdrop of the mortgage

fraud scandal that CSFB and CS guaranteed and/or breached multiple contractual terms and conditions between Plaintiff and/or CSFB and CS.  Additionally, Column breached multiple duties that resulted in the making of a loan to finance the acquisition of certain real property that had a significantly lower purchase price, and a significantly lower market value than required to properly secure the loan.

2.      Plaintiff brings this action in its capacity as successor trustee to a real estate mortgage investment conduit ("REMIC"), which is a trust created to own a pool of securitized loans (the "Trust").  Investors purchase a beneficial interest in income from the Trust in the form of certificates.

3.      REMICs are attractive investments for a number of reasons: the loans purchased by the Trust are backed by real estate as collateral, the collateral meets certain loan to value ratio requirements and income is not taxed at the Trust level.

4.      One of the loans that are part of the Trust was a $3,064,000 loan from Defendant Column Financial, Inc. ("Column") to Cranberry Hill Apartments, LLC ("Cranberry Hill") (the "Cranberry Hill Loan").

5.      The Cranberry Hill Loan was secured by the real property located at 101-135 West Water Street, Slippery Rock, Pennsylvania (the "Cranberry Hill Apartments") and 1200 Dutilh Road, Cranberry, Pennsylvania (the "Norberry Condominiums") (collectively the "Properties").

6.      Pursuant to a Mortgage Loan Purchase Agreement, dated September 1, 2007 (the "MLPA") entered into among Column, as seller, and CSFB, as depositor, Column sold,

2

conveyed and assigned numerous loans to CSFB, one of which was the Cranberry Hill Loan. A true and correct copy of the MLPA is attached hereto as Exhibit "A."

7.     Simultaneously with the execution of the MLPA, Plaintiff entered into a Pooling and Servicing Agreement, dated September 1, 2007 with, *inter alia*, CSFB (the "PSA"). Under the PSA, the Trust is the successor in interest to the rights of CSFB under the MLPA. A true and correct copy of the PSA is attached hereto as Exhibit "B." The PSA and the MLPA shall hereafter collectively at times be referred to as the Loan Sale Documents.

8.     Under the Loan Sale Documents, Column and CFSB made a number of representations and warranties to the Trust as successor to CSFB.

9.     As security for Column and CFSB's representations under the MLPA, CS executed and delivered a Guarantee dated September 1, 2007 (the "CS Guarantee"). Pursuant to the CS Guarantee, CS guaranteed Column and/or CSFB's obligation to repurchase mortgage loans under the MLPA and/or PSA. A true and correct copy of the CS Guarantee is attached hereto as Exhibit "C."

10.     As a sophisticated lender, Column knew or should have known that later assignees of loans, such as Plaintiff, would rely and actually did rely on the representations made with regard to the purchase price of the Properties, the appraised value of the Properties and the loan-to-value ratio and would have never purchased the Cranberry Hill Loan if aware of the true facts surrounding the sale and financing of the purchase of the Properties.

11.     At all relevant times when Column was making decisions about whether to extend a loan to refinance the acquisition of the Properties, Column also knew that any successors to it would rely on the fact that the Properties' valuations relating to the loan met with the

3

requirements of the Financial Institutions Reform Recovery and Enforcement Act of 1989 ("FIRREA") and loan to value requirements.

12. When the Trust and its investors purchased the Cranberry Hill Loan from Column and CSFB, the Trust relied on Column and CFSB's representations and the CSFB and the CS guaranty of such representations as more fully set forth in the Loan Sale Documents.

13. As a result of the purchase of the Cranberry Hill Loan, the Trust and its investors suffered significant harm and Plaintiff, as the successor trustee of the Trust bring this action to recover those damages.

## THE PARTIES

14. Plaintiff is the Successor Trustee of the Trust. On or about July 17, 2009, Plaintiff replaced Wells Fargo Bank, N.A. as Trustee of the Trust. The Plaintiff is a national banking association having its main office at 100 N. Tyron St., Charlotte, North Carolina 28202.

15. Defendant Column Financial, Inc. is a Delaware corporation with a principal place of business located at Eleven Madison Avenue, New York, New York 10010 and was the origination lender for the Properties and the seller of the Cranberry Hill Loan to the Trust.

16. Credit Suisse First Boston Mortgage Securities Corp. is a Delaware corporation with its principal place of business located at Eleven Madison Avenue, New York, New York 10010. CSFB is the depositor of the Cranberry Hill Loan to the Trust.

17. Credit Suisse (USA), Inc. is a Delaware corporation with its principal place of business located at Eleven Madison Avenue, New York, New York 10010. CS is the parent of

Column, the guarantor of Column and/or CSFB's repurchase and/or other obligations under the MLPA and/or PSA with respect to the Cranberry Hill Loan.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action under 28 U.S.C. § 1332 in that the matter in controversy is in excess of $75,000 exclusive of interest and costs, and is between citizens of North Carolina and New York.

19.     Venue is proper in this District under 28 U.S.C. § 1391(a), because Column and CSFB have their principal places of business in this District, a substantial part of the events or omissions giving rise to this claim occurred in this District and Column, CSFB and CS are subject to personal jurisdiction in this District as of the date this action was commenced.

## FACTS
### The Cranberry Hill Loan

20.     Cranberry Hill applied for a loan from Column in the amount of $3,064,000 on or about February 20, 2007.

21.     Column required a minimum 20% equity contribution by Cranberry Hill as a requirement of any loan to be offered by Column.

22.     The purpose of the minimum 20% equity contribution was to ensure that following the closing on any loan, there would be sufficient equity in the Properties to ensure repayment in full to Column as lender in the event of a default.  Stated differently, Column would not permit any loan to exceed 80% of the fair market value of the Properties.  This

5

requirement, known as the "loan-to-value ratio," is typically relied upon by commercial real estate lenders in determining whether or not to make a particular loan.

23.     To satisfy itself that the appropriate loan-to-value ratio existed as to the Properties, Column relied on two purchase agreements reflecting a combined purchase price of $3,845,000 ($2,415,000 for the Cranberry Hill Apartments and $1,430,000 for the Norberry Condominiums).  True and correct copies of the purchase agreements are attached hereto as Exhibit "D."

24.     An appraiser was retained to conduct an appraisal of the Properties and valued the Properties collectively at $3,950,000.  True and correct copies of the appraisal reports are attached hereto as Exhibit "E."  The Defendants, each of them, had knowledge that appraisals made no mention of required renovations and the appraised values were not contingent upon the completion of any such renovations.

25.     However, each of the purchase and sale agreements for the Properties have addendums (the "Addendums") which provide for a "renovation credit" totaling $1,620,000 to be paid by the former owners of the Properties to Cranberry Hill's contractor at closing for renovations and construction for the Properties.  A true and correct copy of the Addendums is attached hereto as Exhibit "F."

26.     The Addendums reveal that the true purchase price for the Properties was $2,225,000 and not $3,845,000 as indicated on the face of the purchase and sale agreements.  For instance, the Addendums provide that the former owners of the Properties were only responsible for transfer taxes on the actual sale price of the Properties of $2,225,000 and not $3,845,000.  *See* Exhibit "F."

6

27.     As reflected on the Settlement Statement for the Cranberry Hill Loan (the "Settlement Statement"), the renovation credit was added to the $2,225,000 purchase price to give the false appearance of a $3,845,000 purchase price which was used by Cranberry Hill, in obtaining a $3,064,000 loan using the maximum loan to value ratio allowed by Column. A true and correct copy of the Settlement Statement is attached hereto as Exhibit "G."

28.     As security for the Cranberry Hill Loan obligations and pursuant to a Mortgage, Security Agreement and Assignment of Leases and Rents dated June 26, 2007 (the "Mortgage"), Cranberry Hill granted Column a mortgage lien in and on the Properties. A true and correct copy of the Mortgage is attached hereto as Exhibit "H."

29.     At all relevant times, Column, the original lender, worked to ensure that the loan closed notwithstanding numerous obvious defects to the Cranberry Hill Loan. Column's motivation to ensure a close was clear: to receive substantial fee revenue from the closing. In fact, Column received a staggering $174,412.31 in origination fees. This fee revenue is the equivalent of over 6 "points" based on a loan amount of $3,064,000. Further, each Defendant herein had numerous opportunities to self-monitor their own activities and disclose any irregularities, misconduct or fraudulent conduct to banking industry regulatory authorities. Column was keenly aware that future successors and assigns of Column would ultimately bear the burden of the loan, including the fraudulently obtained Cranberry Hill Loan.

**Column and CSFB Sell the Cranberry Hill Loan to the Trust**

30.     Column, at all relevant times, anticipated that it would be selling, conveying, or assigning a pool of loans to a third-party thereby relieving itself of the adverse exposure it had from the Cranberry Hill Loan. Indeed, Column eventually transferred the Cranberry Hill Loan to

CSFB with full knowledge that at the same time CSFB was in turn selling that Loan, among others, to the Trust.

31.    Pursuant to the MLPA, dated September 1, 2007 entered into among Column, as seller, and CSFB, as depositor, Column sold, conveyed and assigned numerous loans to CSFB, one of which was the Cranberry Hill Loan. *See* Exhibit "A."

32.    Simultaneously with the execution of the MLPA, the Trust entered into the PSA, dated September 1, 2007 with, *inter alia*, CSFB.  Under the PSA, the Trust is the successor in interest to the rights of CSFB under the MLPA. *See* Exhibit "B."

33.    Under the MLPA, Column made a number of representations and warranties to CSFB and, as a result, CSFB's successor, the Trust.  CSFB, for its part, knew and understood that Column's false representations to CSFB would flow to the Trust under the PSA.

34.    Column developed a relationship of trust with the Trust higher than that which may have arisen in standard agreements. As a result, Column owed a fiduciary duty to the Trust to exercise due care, independence and loyalty in good faith.

35.    As security for Column's representations under the MLPA, CS executed and delivered the CS Guarantee dated September 1, 2007.  Pursuant to the CS Guarantee, CS guaranteed Column's obligation to repurchase mortgage loans under the MLPA.  In turn, CS has guaranteed to Plaintiff the numerous breaches of the representations and warranties set forth in the MLPA. *See* Exhibit "C."

36.     Based on the representations made by Column and CFSB, and CS's Guarantee, the Trust executed the PSA, thereby purchasing the Cranberry Hill Loan.  Plaintiff has been directly harmed by Column, CSFB and CS.

### The Cranberry Hill Loan Defaults

37.     Cranberry Hill predictably defaulted on the terms of the Cranberry Hill Loan. Specifically, Cranberry Hill failed to: a) make the required loan payments due for the months of December 2007 and January 2008; b) pay default interest; c) pay property taxes on the Properties due on April 1, 2008; and d) maintain insurance on the Properties.

38.     Under the PSA, when loans are performing, all aspects of such loans are administered by a "master servicer" on behalf of the Trust.  However, when a purchased loan becomes past due for a period of 60-days or more or otherwise is in default, administration of the loan is transferred to the "special servicer" who handles the workout, which may result in a restructuring, forbearance, and/or the enforcement of remedies, including the liquidation of collateral securing such loan.  Torchlight Investors, formerly ING Clarion Capital Loan Services, LLC is the special servicer for the Cranberry Hill Loan.

39.     An investigation followed Cranberry Hill's default on the Cranberry Hill Loan. Through that investigation, Plaintiff discovered that the true purchase price of the Properties was $2,225,000 and that the true value of the Properties was significantly less.

40.     The Settlement Statement reflects that the "actual" purchase price for the Properties was $2,225,000, which is $1,620,000 less than reflected on the face of the purchase agreements (and elsewhere in the Settlement Statement).  In fact, the purchase price should have

been far less than the values reflected in the appraisals and elsewhere on closing documents. *See* Exhibit H.

41.     Had the Trust been aware of the actual purchase price for the Properties it never would have purchased the Cranberry Hill Loan.

42.     Column was fully aware that the Cranberry Hill Loan would likely become part of a REMIC Trust and CSFB, as the party who sold the Cranberry Hill Loan to the Trust, certainly knew it would become a part of a REMIC Trust and/or purchased by a new lender such as the Trust.

43.     Column, as it had frequently done in the past with similar transactions, made certain representations and warranties ultimately relied on by Plaintiff that the underlying loans were in complete compliance with appraisal requirements, loan to value requirements and met customary commercial mortgage lending standards.

44.     Pursuant to the representations and warranties set forth in Exhibit A to the MLPA at xv, Column and CSFB represented and warranted that, except as set forth in the property inspection report or engineering report prepared in connection with the origination of the Cranberry Hill Loan, the Properties are free of any material damages that would affect materially and adversely the use or value of the Properties.

45.     These reports did not reflect any need for repairs or renovations in the amount of the renovation credit, totaling $1,620,000.

46.     Pursuant to the representations and warranties set forth in Exhibit A to the MLPA at xxxv, Column and CSFB represented and warranted that the fair market value of the

Properties, as evidenced by an appraisal satisfying the requirements of FIRREA conducted within 12 months of the origination of the Cranberry Hill Loan, was at least 80% of the principal amount of the Cranberry Hill Loan at origination.

47.     Pursuant to a June 28, 2007 Loan Summary for the Cranberry Hill Loan, Column and CSFB represented to the Trust that the Cranberry Hill Loan was secured by thirty-four multifamily units comprised of thirteen condominiums and twenty-one apartments. A true and correct copy of the Loan Summary is attached hereto as Exhibit "I."

48.     Contrary to Column and CSFB's representations, the Cranberry Hill Loan was only secured by thirty-three total units.

49.     At the time of the closing on the Cranberry Hill Loan, Cranberry Hill did not own one of these units and, therefore, had no authority to grant Column a mortgage on the unit. In fact, as yet another clear example of fraudulent conduct, the unit was actually owned by a limited liability company owned by the original guarantor of the Cranberry Hill Loan.

50.     As a direct result and contrary to Column and CSFB's representations, the principal amount of the Cranberry Hill Loan was actually 138% of the value of the Properties and the appraisal report did not comply with the requirements of FIRREA, as it grossly over-valued the Properties.

51.     Also pursuant to the representations and warranties set forth in Exhibit A to the MLPA at xx, Column and CSFB represented and warranted that the origination, servicing and collection of the Cranberry Hill Loan is in all respects legal, proper and prudent in accordance with customary commercial mortgage lending standards.

52.     Contrary to Column's representations, the determination of the loan amount, the valuation of the Properties, and the closing were conducted in a manner such that the origination of the Cranberry Hill Loan was improper and imprudent in accordance with customary commercial mortgage lending standards.

53.     As a result of the misrepresentations of Column, followed by the breaches by CS and CSFB under the Loan Sale Documents, Plaintiff has suffered or will suffer damages which have yet to be fully ascertained or calculated but which will likely exceed $4 million ($4,000,000), including interest, attorneys fees, lost value, lost income, and other amounts, consequential or otherwise, recoverable under the MLPA and PSA.

54.     CS, as Column's guarantor, is contractually obligated to compensate Plaintiff for the damages suffered as a result of Column and CSFB's misrepresentations and breaches of the Loan Sale Documents and.

## COUNT I
### Declaratory Judgment that Column Breached the MLPA
### Such That CS, as Column's Guarantor, Column and CSFB are Each Liable to Plaintiff

55.     Plaintiff repeats and realleges all prior allegations as though fully set forth herein.

56.     Under the Loan Sale Documents, Column and/or CSFB made a number of representations and warranties to the Trust as successor to CSFB.

57.     In the Loan Sale Documents, Column and/or CSFB represented and warranted that except as set forth in the property inspection report or engineering report prepared in connection with the origination of the Cranberry Hill Loan, the Properties are free of any material damages that would affect materially and adversely the use or value of the Properties. *See* Exhibits "A" & "B".

58.     These reports did not reflect any need for repairs or renovations, such as the renovations contemplated by the renovation credit, totaling $1,620,000.

59.     In the Loan Sale Documents, Column and/or CSFB represented and warranted that the fair market value of the Properties, as evidenced by an appraisal satisfying the requirements of FIRREA conducted within 12 months of the origination of the Cranberry Hill Loan, was at least 80% of the principal amount of the loan at origination. *See* Exhibits "A" & "B".

60.     Contrary to Column's representations, the principal amount of the Cranberry Hill Loan was 138% of the value of the Properties and the false appraisal report did not comply with the requirements of FIRREA, as it grossly over-valued the Properties.

61.     In the Loan Sale Documents, Column and/or CSFB represented and warranted that the origination, servicing and collection of the Cranberry Hill Loan is in all respects legal, proper and prudent in accordance with customary commercial mortgage lending standards. *See* Exhibits "A" & "B".

62.     Contrary to Column and/or CSFB's representations, the determination of the loan amount and the valuation of the properties were conducted in a manner such that the origination of the loan was improper and imprudent in accordance with customary commercial mortgage lending standards.

63.     Column and/or CSFB's misrepresentations as set forth above constitute material breaches of the Loan Sale Documents.

64. Pursuant to the Loan Sale Documents, the exclusive remedy for breaches of representations and/or warranties is the repurchase of the Cranberry Hill Loan at face value or the replacement of the misrepresented loan with a valid performing loan.

65. Under the CS Guarantee, CS guaranteed the repurchase obligations of Column under the Loan Sale Documents in the event of, among other things, a breach of Column and/or CSFB's representations and warranties to the Trust.

66. On or about January 22, 2009, the Trust notified Column and CS of the aforementioned breaches of representations and warranties and demanded the repurchase of the Cranberry Hill Loan. A true and correct unsigned copy of the demand letter to Column and CS is attached hereto as Exhibit "J."

67. By letter dated April 21, 2009, Column and CS rejected the Trust's repurchase demand and disputed any and all liability to repurchase the Cranberry Hill Loan. A true and correct copy of the response letter to the Trust is attached hereto as Exhibit "K."

68. As a direct result of Column and CS's rejection of the Trust's demands, an actual controversy exist between the parties concerning Column and CSFB's breach of the Loan Sale Documents and CS's duties as guarantor under the CS Guarantee as a result of Column and/or CSFB's breach.

69. As a direct and proximate result of Column and/or CSFB's breaches of the the Loan Sale Documents and Column, CSFB and CS's rejection of the Trust's demands, Plaintiff has been damaged.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in its favor and against Column, CSFB and CS declaring that Column and/or CSFB breached the Loan Sale Documents, such that CS, as guarantor, owes a direct duty to Plaintiff and that each are liable to Plaintiff.

## COUNT II
### Breach of the CS Guarantee by CS

70.     Plaintiff repeats and realleges all prior allegations as though fully set forth herein.

71.     Under the CS Guarantee, CS guaranteed the repurchase obligations of Column under the Loan Sale Documents in the event of, among other things, a breach of Column and/or CSFB's representations and warranties to the Trust.

72.     Pursuant to the Loan Sale Documents, the exclusive remedy for breaches of representations and/or warranties is the repurchase of the Cranberry Hill Loan at face value or the replacement of the misrepresented loan with a valid performing loan.

73.     Under the PSA, the Trust is the successor in interest to the rights of CSFB under the MLPA and Plaintiff is the successor trustee to the Trust.

74.     On or about January 22, 2009, the Trust notified Column, CSFB and/or CS of the aforementioned breaches of representations and warranties and demanded the repurchase of the Cranberry Hill Loan. *See* Exhibit "J."

75.     By letter dated April 21, 2009, Column and CS rejected the Trust's repurchase demand and disputed any and all liability to repurchase the Cranberry Hill Loan. *See* Exhibit "K."

76.     Plaintiff complied with all of its obligations under the CS Guarantee and the PSA.

77.     As a direct and proximate result of Column and/or CSFB's breaches of the Loan Sale Documents, as guaranteed by CS under the CS Guarantee, Plaintiff has been damaged.

78.     By refusing to honor the CS Guarantee, CS breached the CS Guarantee with the direct result that Plaintiff has been damaged.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in its favor and against CS in an amount in excess of four million dollars ($4,000,000.00), interest, pre-judgment interest, costs, disbursements, consequential damages and reasonable attorneys' fees.

## COUNT III
### Breach of the PSA by CSFB

79.     Plaintiff repeats and realleges all prior allegations as though fully set forth herein.

80.     Under the Loan Sale Documents, Column and/or CSFB made a number of representations and warranties to the Trust as successor to CSFB.

81.     In the Loan Sale Documents, Column and/or CSFB represented and warranted that except as set forth in the property inspection report or engineering report prepared in connection with the origination of the Cranberry Hill Loan, the Properties are free of any material damages that would affect materially and adversely the use or value of the Properties. *See* Exhibit "A."

16

82.     These reports did not reflect any need for repairs or renovations, such as the renovations contemplated by the renovation credit, totaling $1,620,000.

83.     In the Loan Sale Documents, Column and/or CSFB represented and warranted that the fair market value of the Properties, as evidenced by an appraisal satisfying the requirements of FIRREA conducted within 12 months of the origination of the Cranberry Hill Loan, was at least 80% of the principal amount of the loan at origination. *See* Exhibit "A."

84.     Contrary to Column's representations, the principal amount of the Cranberry Hill Loan was 138% of the value of the Properties and the appraisal report did not comply with the requirements of FIRREA, as it grossly over-valued the Properties.

85.     In the Loan Sale Documents, Column and/or CSFB represented and warranted that the origination, servicing and collection of the Cranberry Hill Loan is in all respects legal, proper and prudent in accordance with customary commercial mortgage lending standards. *See* Exhibit "A."

86.     Contrary to Column and/or CSFB's representations, the determination of the loan amount and the valuation of the properties were conducted in a manner such that the origination of the loan was improper and imprudent in accordance with customary commercial mortgage lending standards.

87.     At the same time that Column entered into the MLPA with CSFB, CSFB entered into the PSA with the Trust, effectively transferring the Cranberry Hill Loan to the Trust.

88.     In the PSA, CSFB also transferred to the Trust the mortgage loan file and documents, including the Cranberry Hill Loan documents, containing the multiple

17

misrepresentations of Column and/or CSFB with the knowledge that the Trust would rely on these documents as valid, legal, effective, in recordable form, genuine, enforceable, sufficient and appropriate for the represented purpose of each document on its face.

89.     CSFB breached the PSA by allowing the Trust to rely on the Cranberry Hill Loan documents as outlined above, because the Cranberry Hill Loan documents contained Column's multiple misrepresentations.

90.     At all relevant times, Plaintiff performed its duties under the PSA.

91.     As a result of CSFB's breaches of the PSA, Plaintiff has suffered damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in its favor and against CSFB in an amount in excess of four million dollars ($4,000,000.00), interest, pre-judgment interest, costs, disbursements, consequential damages and reasonable attorneys' fees.

## COUNT IV
### Fraud Against Column

92.     Plaintiff repeats and realleges all prior allegations as though fully set forth herein.

93.     Column committed specific fraudulent conduct as set forth herein.

94.     Column's misrepresentations/omissions include, but are not limited to:

      A.     misrepresenting that the purchase price for the Properties was $3,845,000 instead of $2,225,000;

      B.     misrepresenting the amounts Cranberry Hill funded/received at closing;

      C.     misrepresenting that the amount of the loan did not exceed 80% of the value of the Properties, when in actuality it was 138% of the value;

      D.     misrepresenting that renovations would be performed and that a $1,620,000 renovation credit would be paid to Cranberry Hill's contractor at closing for renovations, when no renovations were made or intended to be made and no credit was paid; and

      E.     misrepresenting the fair market value of the Properties in the appraisal reports.

95.     Column knew that its conduct was fraudulent, misleading, deceptive in accomplishing the tortuous result of harming Plaintiff.

96.     Column's multiple fraudulent misrepresentations were made to CSFB, which was succeeded by the Trust, which was ultimately succeeded by Plaintiff.  These multiple sales of the Cranberry Hill Loan were expected and entirely foreseeable to Column at the time it made the foregoing fraudulent misrepresentations.

97.     But for Column's actions, Plaintiff would not have been defrauded and would not have purchased the Cranberry Hill Loan.  Plaintiff has suffered pecuniary harm in an amount to be proven at trial.

98.     As a proximate result, Plaintiff has been damaged.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in its favor and against Column in an amount in excess of four million dollars ($4,000,000.00), interest, pre-judgment interest, costs, disbursements, consequential damages and reasonable attorneys' fees.

**COUNT V**
**Common Law Conspiracy in Furtherance of Fraud**
**Against Column, CSFB and CS**

99.     Plaintiff repeats and realleges all prior allegations as though fully set forth herein.

100.     Column, (a CS Company) and CSFB and CS each engaged in multiple overt acts, over time, as described herein and acted together with a common purpose to deceive the Trust and all successors to the Trust as to the Cranberry Hill Loan, such as Plaintiff, by making fraudulent representations regarding the transaction.

101.     These misrepresentations/omissions include, but are not limited to:

A.     misrepresenting that the purchase price for the Properties was $3,845,000 instead of $2,225,000;

B.     misrepresenting the amounts Cranberry Hill funded/received at closing;

C.     misrepresenting the amount of the loan did not exceed 80% of the value of the Properties, when in actuality it was 138% of the value;

      D.       misrepresenting that renovations would be performed and that a $1,620,000 renovation credit would be paid to Cranberry Hill's contractor at closing for renovations, when no renovations were made or intended to be made and no credit was paid; and

      E.       misrepresenting the fair market value of the Properties in the appraisal reports.

102.    Column and/or CSFB and/or CS made the above representations/omissions in furtherance of the conspiracy for the sole purpose to cause harm to Plaintiff and the ultimate investors in the Trust.

103.    Column and/or CSFB and/or CS committed an overt act in furtherance of the common purpose of conspiracy by transferring the Cranberry Hill Loan to the Trust.

104.    Both Column, CS and/or CSFB performed the overt acts as described herein pursuant to and in furtherance of a common purpose and/or in furtherance of a sole purpose to protect themselves and an agreement and conspiracy with one another to misrepresent and/or conceal material deficiencies in the loan process relating to the Properties.

105.    But for Column, CS and/or CSFB's participation through such overt acts, CSFB would not have been able to mislead and defraud the Trust into purchasing the Cranberry Hill Loan.

106.    Column, CS and/or CSFB's participation in the fraud perpetrated against Plaintiff was substantial, and was intentional, reckless and/or done in malicious disregard for the pecuniary damage caused to Plaintiff.

107.    Column, CS and/or CSFB, each of them, participated in the fraud and did so without privilege or justification.

108.    The conspiracy amongst Column, CS and/or CSFB was the cause in fact and/or proximate cause of the pecuniary losses suffered by Plaintiff.

109.    Column, CS and/or CSFB are each liable to Plaintiff, jointly and severally, for the pecuniary loss in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in its favor and against Column and CSFB, jointly and severally, in an amount in excess of four million dollars ($4,000,000.00), interest, pre-judgment interest, costs, disbursements, consequential damages and reasonable attorneys' fees.

<u>COUNT VI</u>
**Negligent Misrepresentation Against Column**

110.    Plaintiff repeats and realleges all prior allegations as though fully set forth herein.

111.    Column made the following material misrepresentations/omissions of fact:

A.    failed to discover that the purchase price for the Properties was $2,225,000 instead of $3,845,000;

B.    misrepresented the amounts Cranberry Hill funded/received at closing;

C.    failed to discover that the amount of the loan was 138% of the value of the Properties in violation of Column's origination requirements;

D.    failed to discover that renovations would not be and were never intended to be performed and that a $1,620,000 renovation credit would not be and never was intended to be paid to Cranberry Hill's contractor at closing; and

E.    failed to discover the as a result of the actual purchase price being $2,225,000 instead of $3,845,000, that Cranberry Hill either absconded with in excess of $800,000 in loan proceeds or did not make the down payment as required under the Cranberry Hill Loan Documents.

112.    Column knew or should have known that these representations were false.

113.   Column knew or should have known that the Trust would rely upon its representations and the documentation regarding the Cranberry Hill Loan in determining whether or not to purchase the Cranberry Hill Loan and place it into the Trust.

114.   Column knew or should have known that but for the misrepresentations and omissions of Column, the Trust would not have purchased the Cranberry Hill Loan.

115.   Column intended to induce the Trust to rely on these misrepresentations and concealment of material facts.

116.   Column failed to exercise care or competence with respect to all aspects of the origination and closing of the Cranberry Hill Loan.

117.   As a direct and proximate result of Column's negligent misrepresentations, the Trust purchased the Cranberry Hill Loan.

118.   As a direct and proximate result of Column's negligent misrepresentations, Plaintiff, as successor to the Trust, has suffered pecuniary loss in an amount to be proven at trial.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in its favor and against Column in an amount in excess of four million dollars ($4,000,000.00), interest, pre-judgment interest, costs, disbursements, consequential damages and reasonable attorneys' fees.

## COUNT VII
### Tortious Interference with Prospective Contractual Relationships
### Against Column, CSFB and CS

119.   Plaintiff repeats and realleges all prior allegations as though fully set forth herein.

23

120.    Column, CSFB and/or CS were aware that Plaintiff had a prospective contractual relationship with CSFB or should have known that a prospective contractual relationship with CSFB had a great likelihood of occurring following the execution of the MLPA.

121.    The aforementioned actions of Column, CSFB and CS constitute tortious interference with a prospective business relationship of the Plaintiff with CSFB, including such relationships with other lenders or financial institutions.

122.    Column, CSFB and/or CS had no privilege or justification for its improper actions and/or inactions and engaged in such conduct for improper purposes.

123.    Column, CSFB and/or CS is liable to the Plaintiff for the pecuniary loss in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in its favor and against Column, CSFB and/or CS, jointly and severally, in an amount in excess of four million dollars ($4,000,000.00), interest, pre-judgment interest, costs, disbursements, consequential damages and reasonable attorneys' fees.

## COUNT VIII
### Breach of Fiduciary Duty Against Column

124.    Plaintiff repeats and realleges all prior allegations as though fully set forth herein.

125.    Column developed a relationship of trust with the Trust higher than that which may have arisen in standard agreements. As a result, Column owed a fiduciary duty to the Trust to exercise due care, independence and loyalty in good faith.

126.    Under the MLPA, Column made a number of representations and warranties over time, and with the complete knowledge that the Trust would rely in good faith on the representations of Column through CSFB.

127.    Also, the Plaintiff had certain rights assigned to it and, as such,  relied in good faith on the many representations of Column through CSFB to the Trust.  Column undertook and wrongly breached fiduciary obligations to Plaintiffs by, among many other things, fraudulently inducing Plaintiffs to enter into transactions and inducing Plaintiff to continue its commitment under the MLPA and PSA.

128.    Column surreptitiously and deceitfully refused to share accurate information which it knew, should have known or should have endeavored to further investigate about the Cranberry Hill Loan and the Properties.

129.    Column exercised extraordinary control over the underlying loans and was in a unique position to know the truth with regard to the Cranberry Hill Loan.

130.    Column stood in a fiduciary capacity, with respect to the Cranberry Hill Loan, the MLPA and PSA in its ongoing dealings with the Trust and its successor trustee, Plaintiff.  The fiduciary duties owed to Plaintiff, were to act, at all times honestly, and with the utmost good faith in its dealings with Plaintiff.

131.    The confidential relationship existed between Column and Plaintiff.  The conduct of Column, at all times referenced herein, constitutes a breach of its fiduciary duties in connection with the Cranberry Hill Loan and Column's overall dealings with Plaintiff.

132.    Plaintiff suffered damages as a result of Column's breach of its fiduciary duties to Plaintiff.

WHEREFORE, Plaintiff respectfully requests in the alternative that this Honorable Court enter judgment in its favor and against Column in an amount in excess of four million dollars ($4,000,000.00), interest, pre-judgment interest, costs, disbursements, consequential damages and reasonable attorneys' fees.

**COUNT IX**
**Aiding and Abetting Breach of Fiduciary Duty Against CSFB**

133.    Plaintiff repeats and realleges all prior allegations as though fully set forth herein.

134.    Column developed a relationship of trust with the Trust higher than that which may have arisen in standard agreements. As a result, Column owed a fiduciary duty to the Trust to exercise due care, independence and loyalty in good faith.

135.    Under the MLPA, Column made a number of representations and warranties over time, and with the complete knowledge that the Trust would rely in good faith on the representations of Column through CSFB. CSFB was complicit in a number of the representations and warranties over time and also had complete knowledge that the Trust would rely in good faith misleading or false representation made over time by both Column and/or CSFB.

136.    Also, the Plaintiff had certain rights assigned to it and, as such, relied in good faith on the many representations of Column and/or CSFB to the Trust. Column and/or CSFB undertook and wrongly breached fiduciary obligations to Plaintiffs by, among many other things,

fraudulently inducing Plaintiffs to enter into transactions and inducing Plaintiff to continue its commitment under the Loan Sale Documents.

137.    Column and/or CSFB surreptitiously and deceitfully refused to share accurate information which it knew, should have known or should have endeavored to further investigate about the Cranberry Hill Loan and the Properties.

138.    Column exercised extraordinary control over the underlying loans and was in a unique position to know the truth with regard to the Cranberry Hill Loan. Column's knowledge is imputed to CSFB as an entity related to Column through CS.

139.    Column stood in a fiduciary capacity, with respect to the Cranberry Hill Loan, and received substantial assistance from CSFB when CSFB executed the MLPA at the same time it transferred the Cranberry Hill to the Trust by executing the PSA, as well as in its ongoing dealings with the Trust and its successor trustee, Plaintiff. The fiduciary duties owed to Plaintiff, were to act, at all times honestly, and with the utmost good faith in its dealings with Plaintiff.

140.    The confidential relationship existed between Column and Plaintiff. The conduct of Column, at all times referenced herein, constitutes a breach of its fiduciary duties in connection with the Cranberry Hill Loan and Column's overall dealings with Plaintiff.

141.    Column's breach of its fiduciary duties to Plaintiff were substantially and knowingly aided and abetted by CSFB.

142.    Plaintiff suffered damages as a result of Column's breach of its fiduciary duties to Plaintiff, as aided and abetted by CSFB.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in its favor and against Column and CSFB, jointly and severally, in an amount in excess of four million dollars ($4,000,000.00), interest, pre-judgment interest, costs, disbursements, consequential damages and reasonable attorneys' fees.

## COUNT X
### Promissory Estoppel against Column, CSFB and CS

143.    Plaintiff repeats and realleges all prior allegations as though fully set forth herein.

144.    Under the MLPA, Column made a number of representations and warranties to the Trust concerning the Cranberry Hill Loan.

145.    Pursuant to the CS Guarantee, CS guaranteed the repurchase obligations of Column and/or CSFB under the Loan Sale Documents in the event of, among other things, a breach of Column's misrepresentations and warranties to the Trust.

146.    Defendants intended for Plaintiff to rely on those representations.

147.    Plaintiff relied on those representations to its detriment by purchasing the Cranberry Hill Loan.

148.    As a direct and proximate result, Plaintiff has been damaged.

WHEREFORE, Plaintiff respectfully requests in the alternative that this Honorable Court enter judgment in its favor and against Defendants, jointly and severally, in an amount in excess of four million dollars ($4,000,000.00), interest, pre-judgment interest, costs, disbursements, consequential damages and reasonable attorneys' fees.

## COUNT XI
### Breach of Covenant of Good Faith and Fair
### Dealing against Column, CSFB and CS

149.   Plaintiff repeats and realleges all prior allegations as though fully set forth herein.

150.   In every contractual relationship there exists a covenant of good faith and fair dealing.  Defendants, each of them, breached the covenant of good faith and fair dealing implied in the Loan Sale Documents and the various Cranberry Hill Loan related agreements and/or contractual obligations.

151.   The Defendants, Column, CSFB and CS, each of them, breached covenants of good faith and fair dealing implied in the aforementioned agreements, among other things:

A.   misrepresenting that the purchase price for the Properties was $3,845,000 instead of $2,225,000;

B.   misrepresenting the amounts Cranberry Hill funded/received at closing;

C.   misrepresenting that the amount of the loan did not exceed 80% of the value of the Properties, when in actuality it was 138% of the value;

D.   misrepresenting that renovations would be performed and that a $1,620,000 renovation credit would be paid to Cranberry Hill's contractor at closing for renovations, when no renovations were made or intended to be made and no credit was paid; and

E.   misrepresenting the fair market value of the Properties in the appraisal reports.

152.   The Defendants, Column, CSFB and CS, each of them, failed to render a sincere and substantial performance of its obligations under the subject agreements and as may be discovered or disclosed throughout discovery.

153.    By virtue of the foregoing, plaintiff as suffered pecuniary harm and damages in an amount to be proven at trial.

WHEREFORE, Plaintiff respectfully requests in the alternative that this Honorable Court enter judgment in its favor and against Defendants, Column, CSFB and CS, jointly and severally, in an amount in excess of four million dollars Four Million Dollars, ($4,000,000.00), interest, pre-judgment interest, costs, disbursements, consequential damages and reasonable attorneys' fees.

BUCHANAN INGERSOLL & ROONEY PC


H. Marc Tepper
N.Y. Bar No. 652656
Christopher P. Schueller
N.Y. Bar No. 509543
620 Eighth Avenue, 20th Floor
New York, NY 10018-1669
(212) 440-4400

Dated:  August 24, 2010          Attorneys for Plaintiff