ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7·6·11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -X
BANK OF AMERICA, N.A., as Successor
Trustee to Wells Fargo Bank, N.A.,
Trustee for the Registered Holders of
Credit Suisse First Boston Mortgage
Securities Commercial Mortgage
Pass-Through Certificates,

                Plaintiff,         10 Civ. 6378 (LLS)

     - against -             OPINION AND ORDER

COLUMN FINANCIAL, INC., CREDIT SUISSE
FIRST BOSTON MORTGAGE SECURITIES CORP.,
and CREDIT SUISSE (USA), INC.,

                Defendants.
- - - - - - - - - - - - - - - - - - - -X

    Plaintiff, as trustee for the beneficiaries of a trust fund (the "Trust"), sues defendants for breach of contract in the sale of a mortgage loan to the Trust. Defendants moved to dismiss the amended complaint. Instead of opposing that motion, plaintiff moves to further amend the complaint under Fed. R. Civ. P. 15(a)(2).

    Defendants argue that it would be futile to include a claim against defendant Credit Suisse First Boston Mortgage Securities Corp. ("CSFB") in the second amended complaint, and therefore they oppose plaintiff's motion to that extent.

## Background

1.

In 2007, CSFB bought from defendant Column Financial, Inc., a package of mortgage loans under a mortgage loan purchase agreement ("MLPA"). CSFB then sold those and other loans to the Trust under a pooling and servicing agreement ("PSA"). CSFB acted as "depositor" under the PSA: a "depositor" "securitizes the loans -- meaning, in effect, that the depositor secures the rights to cash flows from the loans so that those rights can be sold to investors." Wyo. State Treasurer v. Moody's Investor Serv., Inc. (In re Lehman Bros. Mortgage-Backed Secs. Litig.), 10-0712-cv, 10-0898-cv, 10-1288-cv, ___ F.3d ___, 2011 WL 1778726 (2d Cir. May 11, 2011), at *2. CSFB accomplished this by issuing "mortgage pass-through certificates," which entitle certificate holders to income from, but not ownership of, the loans: the Trust owns the loans and collects principal and interest payments, which it then distributes to the certificate holders.

Wells Fargo Bank, N.A was the original trustee for the Trust. Plaintiff replaced Wells Fargo on July 17, 2009.

Under section 7 of the MLPA, if Column receives notice of a material breach of its representations and warranties or a material defect in the loan documents, it must within 90 days

cure the breach or defect, repurchase the affected loan, or "substitute, in accordance with the Pooling and Servicing Agreement, one or more Qualified Substitute Mortgage Loans (as defined in the Pooling and Servicing Agreement) for such affected Mortgage Loan." MLPA § 7, at 14.

The MLPA provides, "It is understood and agreed that the obligations of Seller [Column] set forth in this <u>Section 7</u> to cure, substitute for or repurchase a Mortgage Loan constitute the sole remedies available to Depositor [CSFB] and its successors and assigns respecting any Breach or Defect affecting a Mortgage Loan." <u>Id.</u> § 7, at 17 (underline in original). Plaintiff, as trustee, is the assignee of CSFB's "right, title, and interest" under the MLPA. <u>See</u> PSA[1] § 2.01(a), at 92-93, which says,

> The Depositor [CSFB], concurrently with the execution and delivery hereof, does hereby assign, sell, transfer, set over and otherwise convey to the Trustee, without recourse, for the benefit of the Certificateholders, all right, title and interest of the Depositor, including any security interest therein for the benefit of the Depositor, in, to and under (i) the Original Mortgage Loans, (ii) the Mortgage Loan Purchase Agreements and (iii) all other assets included or to be included in the Trust Fund.

Thus the remedies available to the assignees under the PSA, the trustee and the ultimate certificate holders, are similarly

---

[1] Annexed as Exhibit B to the second amended complaint.

- 3 -

limited: "The related Mortgage Loan Purchase Agreement and, in the case of Column Mortgage Loans, the Column Performance Guarantee,[2] provide the sole remedies available to the Certificateholders, or the Trustee on their behalf, respecting any Breach or Document Defect." PSA § 2.03(f), at 105.

The PSA gives effect to that limitation by a structural mechanism. It defines a breach as a misrepresentation by one of only a small class of "Mortgage Loan Sellers", and then provides for enforcement only of the obligations of those Mortgage Loan Sellers.

The PSA proceeds step by step. First, it defines "Breach": "'<u>Breach</u>' shall mean, with respect to any Mortgage Loan, any breach of representation or warranty made by a Mortgage Loan Seller pursuant to <u>Section 4(b)(iii)</u> or <u>6(xii)</u> of the related Mortgage Loan Purchase Agreement. <u>Id.</u> § 1.01, at 12, 36-37 (underlines in original).

Next, it provides for enforcement: "The Trustee shall (and the applicable Special Servicer may) enforce the obligations of each Mortgage Loan Seller under Section 7 of the related Mortgage Loan Purchase Agreement." <u>Id.</u> § 2.03(b), at 103.

---

[2] Defendant Credit Suisse (USA), Inc. ("CS") guaranteed "all sums due by, and the performance of all obligations of" Column under the MLPA," but if and only to the extent such amounts and obligations arise from" Column's obligation to repurchase loans under section 7 of the MLPA. <u>See</u> CS Guarantee at 1, Sept. 1, 2007 (annexed as Exhibit C to the second amended complaint). CS "waives any and all defenses it may have arising out of . . . the absence of any action to enforce" the MLPA. <u>Id.</u> at 2.

The significance of this process is that CSFB is not a Mortgage Loan Seller. The Mortgage Loan Sellers are explicitly confined to those entities listed in the PSA: "'<u>Mortgage Loan Seller</u>' shall mean the Column Mortgage Loan Seller, the PNC Bank Mortgage Loan Seller or the NCB Mortgage Loan Seller." <u>Id.</u> § 1.01, at 55 (underline in original).

CSFB is not one of those entities. That is consistent with the MLPA's grant to CSFB of remedies only against Column, and the assignment of those rights to the trustee without recourse against the Depositor.

2.

Those provisions of the MLPA and PSA are crucial in determining the proper parties to this lawsuit, which arises from the following situation.

Included in the loans Column sold to CSFB under the MLPA, which CSFB then sold to the Trust under the PSA, was a $3,064,000 loan to Cranberry Hill Apartments, LLC (the "Cranberry Hill Loan"), secured by two pieces of real property. In support of its loan application, Cranberry Hill had submitted to Column agreements showing a combined purchase price of $3,845,000 for those properties, but subsequent addenda provided that the sellers would pay back to Cranberry Hill $1,620,000 for

necessary renovations. Thus, the actual purchase price for the properties was only $2,225,000.

Pursuant to the MLPA, Column obtained appraisal reports which valued the properties securing the Cranberry Hill Loan at $3,950,000, but those reports "made no mention of required renovations and the appraised values were not contingent upon the completion of any such renovations." Second Am. Compl. ¶ 24.

In 2008, Cranberry Hill defaulted on its obligations under the Cranberry Hill Loan by failing to make required loan payments, pay default interest, pay property taxes, and maintain insurance on the mortgaged properties. Under the PSA, when a loan is in default, "administration of the loan is transferred to the 'special servicer' who handles the workout, which may result in a restructuring, forbearance, and/or the enforcement of remedies, including the liquidation of collateral securing such loan." Id. ¶ 38. The "special servicer" responsible for the Cranberry Hill Loan was ING Clarion Capital Loan Services, LLC.

While attempting to sell the properties securing the Cranberry Hill Loan, ING discovered that the properties required renovation, and thus were purchased for $2,225,000 instead of $3,845,000. ING determined that Column had materially breached

its representations and warranties under the MLPA by failing to account for the necessary renovations when representing the value of the properties securing the Cranberry Hill Loan. See MLPA Ex. A, Rep. & Warranty xv ("each related Mortgaged Property is free of any material damage that would affect materially and adversely the use of such Mortgaged Property as security for the Mortgage Loan"); id. Rep. & Warranty xxxv (at time of origination or at time of signing MLPA, fair market value of each mortgaged property "was at least equal to 80% of the principal amount of the Mortgage Loan").

ING sent Column and CS a letter dated January 22, 2009, informing them of Column's breaches and advising them that under the MLPA, Column had 90 days to cure the breaches, repurchase the loan, or substitute a different loan for the Cranberry Hill Loan. By letter dated April 21, 2009, Column denied breaching its representations and warranties, and therefore declined to cure, repurchase, or substitute.

Plaintiff commenced this action on August 25, 2010, claiming, among other things, that CSFB breached the PSA's implied covenant of good faith and fair dealing by allowing the Trust to rely on the MLPA, having failed to ensure that the Cranberry Hill Loan documentation supported Column's representations and warranties.

## Discussion

"The court should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave may be denied, however, for reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962).

Defendants argue that the claim in the second amended complaint against CSFB is futile. "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Oneida Indian Nation v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), quoting Bell Atl. Corp. v. Twombly, 540 U.S. 544, 570 (2007). In deciding a motion to dismiss, "a court must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the

complaint liberally." Rescuecom Corp. v. Google Inc., 562 F.3d 123, 127 (2d Cir. 2009) (internal quotation marks omitted).

The terms of the MLPA and PSA bar plaintiff's claim against CSFB. The PSA makes clear that CSFB transfers to the Trust only that which it received from Column, and without recourse against CSFB. It states that CSFB "does hereby assign, sell, transfer, set over and otherwise convey to the Trustee, without recourse, for the benefit of the Certificateholders all right, title and interest of the Depositor, including any security interest for the benefit of the Depositor, in, to, and under" (i) the mortgage loans, (ii) the MLPA and (iii) any assets included or to be included in the Trust." PSA § 2.01(a), at 92-93. As stated in Corestates Bank, N.A. v. Signet Bank, No. CIV. A. 96-3199, 1996 WL 482909 (E.D. Pa. Aug. 26, 1996), at *4, "The words 'without recourse' generally mean that the holder, Corestates, cannot pursue the seller, Signet, on the underlying obligation, the Loan, in the event that payment is not forthcoming from the party primarily liable, PM." See 29 Richard A. Lord, Williston on Contracts § 74:8 (4th ed. 2003) (". . . the words 'without recourse' . . . for an assignor, unlike the indorser of negotiable paper, warrants only that the assigned claim is legally valid. The assignor does not guarantee the debtor's solvency, or that the debtor will fulfill its obligations.");

Black's Law Dictionary (9th ed. 2009) (defining "without recourse": "With this stipulation, one who indorses an instrument indicates that he or she has no further liability to any subsequent holder for payment.").

That limitation comports with the remedial scheme established by the MLPA and PSA: the MLPA provides that Column's obligations to cure, repurchase or substitute are the "sole remedies available to Depositor and its successors and assigns respecting any or Breach or Defect," MLPA § 7, at 17, and the PSA restricts the trustee's remedies to those provided under the MLPA and CS's guarantee, PSA § 2.03(h), at 105, and limits the responsible parties to the Mortgage Loan Sellers. That is the regime accepted by plaintiff's predecessor trustee, Wells Fargo, and it is binding on plaintiff.

Plaintiff's claim that CSFB is in breach of the PSA under an implied covenant of good faith and fair dealing is unsuccessful. It asserts that CSFB was required, and failed, to perform "due diligence" on the Cranberry Hill Loan "in accordance with customary commercial mortgage lending standards." Second Am. Compl. ¶ 56. Such a duty, and concomitant obligation to the certificate holders, is inconsistent with the PSA, which specifies that CSFB's transfer is non-recourse and excludes CSFB from those responsible for

breaches.  Cf. Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 304, 448 N.E.2d 86, 91 (1983) ("No obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship.").

Accordingly, amending the complaint to include a claim against CSFB for breach of the covenant of good faith and fair dealing would contravene the PSA's provision that CSFB's transfer was without recourse, and would be futile.

## Conclusion

Plaintiff's motion for leave to amend (Docket No. 22) is granted with respect to the claims against Column and Credit Suisse, but denied with respect to the proposed claim against CSFB.  Defendants' motion to dismiss the first amended complaint (Docket No. 11) is granted, as that complaint is now moot.

So ordered.

Dated: New York, NY
       July 5, 2011

*Louis L. Stanton*
LOUIS L. STANTON
U. S. D. J.